THE KANSAS CITY NORTHWESTERN RAILROAD COMPANY v. REBECCA B. CATON AND JOSEPH SPECK.

No. 630.*   (60 Pac. 544.)

FRAUD—*Equitable Proceedings for Relief.—Jurisdiction.* In a proceeding in equity for relief from fraudulent judicial proceedings, and for a recovery by the beneficiary for the wrongful death of a husband, where the court acquires jurisdiction of the parties and the subject-matter, it becomes the privilege and duty of the court to proceed with the case to final judgment and render such complete justice between the parties as may be warranted by the facts.

Error from Jefferson district court; LOUIS A. MYERS, judge. Opinion filed March 16, 1900. Affirmed.

*Waggener, Horton & Orr,* for plaintiff in error.

*Waters & Waters,* and *Morse & Morse,* for defendant in error, Rebecca B. Caton.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Rebecca B. Caton against the Kansas City Northwestern Railroad Company and Joseph Speck, on the 5th day of June, 1897, in the district court of Jefferson county. The plaintiff alleged the death of her husband, William B. Caton, and that his death was caused by the negligence of the defendant railroad company; the appointment of Speck as administrator; the obtaining by defendants from the probate court of Wyandotte county, on November 19, 1896, of an order to compromise; and the rendition in an action in the court of common pleas of Wyandotte county of a fraudulent and collusive judgment; and prayed the court to set

* Petition for order to certify denied by supreme court April 6, 1900.—REP.

aside and vacate such appointment of Speck as administrator, the aforesaid order of the probate court, and the order of the court of common pleas of Wyandotte county, and asked for judgment against the defendant railroad company in the sum of $10,000.

The defendants filed separate demurrers to the plaintiff's petition upon all of the statutory grounds. These demurrers were overruled by the court, the defendants excepting. The Kansas City Northwestern Railroad Company filed a general denial, except as to matters specifically admitted; alleged contributory negligence and knowledge of the danger on the part of William B. Caton, and further averred that the plaintiff ought not to have or maintain her action because Joseph Speck was the legally appointed administrator of the deceased, and because the matter of the plaintiff's claim had been duly adjudicated and determined in a former action in the court of common pleas of Wyandotte county; and that the judgment rendered by the court in Wyandotte county had been satisfied. The answer further averred that there was a defect of parties, a misjoinder of causes of action, and a lack of jurisdiction in the court. Speck filed a separate answer, alleging substantially the same facts, except for the allegation of contributory negligence. The replies were, in substance, general denials.

Subsequently the two defendants filed separate motions to require the plaintiff to elect between her cause of action to set aside the alleged fraudulent judicial proceedings and her cause of action to recover for the death of Caton, both of which motions were overruled. A trial was had before the court and a jury, and a verdict returned for the plaintiff in the sum of $1600, and judgment rendered thereon. The defendants' motions for a new trial were overruled and the defendant rail-

18—9 KAN. APP.

road company, as plaintiff in error, presents the record to this court for review, and alleges error in the proceedings of the trial court.

The principal facts as disclosed by the record are as follows : The deceased, William B. Caton, was a resident of Wyandotte county ; he died on September 11, 1896, within the state of Kansas, leaving some personal estate, which was liable to pass into the hands of an administrator. John W. Wagner, an undertaker, on September 17, had a claim against the estate of deceased for burial expenses amounting to about $110, and on that date he filed in the probate court his petition representing that the deceased was a resident of Wyandotte county ; that he died in the state of Kansas on the 11th day of September, 1896, leaving property requiring immediate care and attention. The probate court issued letters of administration upon the estate to Joseph Speck, a resident of Wyandotte county, who filed his bond and oath of office and entered upon the discharge of his duties. Speck has not resigned, nor has he been removed from the trust.

Caton was a locomotive engineer, and at the time of his death was sixty-two years of age ; he had been in the employ of the defendant railway company for nine years, and eight years a resident of the state of Kansas ; he was familiar with the road-bed and railway-track. He was killed in a wreck on the 11th day of September, 1896, while running his engine over the road of defendant company. During the two years immediately prior to his death, he contributed nothing to the support of plaintiff.

Rebecca B. Caton, at the time of her husband's death, was a resident of Massachusetts ; she was never, at any time, a resident of this state. None of

the officers, agents or attorneys of either the defendant railway company or of the Missouri Pacific Railway Company had anything whatever to do in procuring Wagner to file his petition for the appointment of an administrator, nor had any of such officers, agents, attorneys or railway companies anything whatever to do in procuring the appointment of an administrator.   The plaintiff, Caton, was the widow and only next of kin to the deceased.

It was alleged, and the jury found, that Caton's death was caused by the negligence of the defendant railroad company in permitting rotten ties to remain in its track long after it should have, by the exercise of ordinary diligence, discovered and repaired the defects ; that after the death of Caton the railroad company and the defendant Speck, for the purpose of defeating and preventing the plaintiff, as widow and only next of kin, from asserting and maintaining her claim and cause of action at law against the railroad company on account of the death of Caton, collusively and fraudulently entered into an agreement, unknown to the plaintiff, to procure a judgment to be entered in the court of common pleas of Wyandotte county in favor of Speck, as administrator of the estate of Caton, deceased, and against the railroad company, for the sum of $600 and costs, and that judgment was entered and satisfied of record pursuant to such agreement.

There are eighty-six formal assignments of error, but it is not necessary that they should be considered separately, as few questions are presented by the record.   The plaintiff in error contends that for an injury resulting in a death the only action that can be brought is created by sections 418 and 419 of chapter .

95, General Statutes of 1897 (Gen. Stat. 1899, §§ 422, 422a), which read:

" When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed $10,000, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

" In all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 422 of the civil code of 1868 (the next preceding section) is or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal represenative is or has been appointed, the action provided in said section may be brought by the widow, or, where there is no widow, by the next of kin of such deceased."

These sections give a right of action in the first place solely to the administrator, or, if the deceased was a non-resident or if no personal representative of his estate has been appointed, to the widow or next of kin. In the first instance, in an action by the widow or next of kin the plaintiff must allege in his petition, as a condition precedent to his right of action, among other things, that there has been no administrator appointed.

The defendant in error sought to avoid the force of this statute by pleading that the appointment of the administrator, the procurement of the order allowing him to settle the claim against the railroad company, the filing of the suit against the company, the procuring of judgment, the payment and release thereof

and all proceedings done by the administrator were collusive and fraudulent as against the rights of plaintiff, and therefore void. The jury made special findings of fact, and found all of these contentions in favor of plaintiff and against the defendant railroad company and Speck, except that they found that the appointment of the administrator was not collusive, but that he was regularly appointed, without fraud or collusion on the part of either of the defendants.

The plaintiff in error contends that, inasmuch as the jury found that the administrator was properly appointed, without fraud or collusion on the part of the railroad company or other parties interested, his appointment was valid and binding upon all parties concerned, no matter what may have been his conduct thereafter; that the plaintiff, Caton, had no authority to prosecute the action, and that the judgment was therefore contrary to the law.

The real contention in this case may be summed up by stating that the railroad company contends that the right of action for injuries resulting in the death of a party accrues only to the administrator, where one has been appointed; that no right of action is created or exists under our statute to the widow of such deceased party, and that under no circumstances can she prosecute an action for the recovery of such damages when there has been legally appointed an administrator. The defendant in error concedes, on the other hand, that such is the law governing an ordinary action, but insists that under the facts disclosed by the record herein the railroad company entered into a fraudulent scheme for the purpose of defrauding her of her rights accruing by reason of the wrongful killing of her husband, and therefore that she may maintain an action, in the na-

ture of a proceeding in equity, by which she can be relieved, as though no administrator had been appointed.

From the findings of the jury, it appears that the administrator was legally appointed, without any fraud or collusion on the part of the railroad company, but that all other matters done and performed by him subsequent to his appointment were done as the result of collusion between him and the railroad company. Mrs. Caton is the real party in interest, and it appears to us that she ought to be relieved from the wrongful acts done in the premises. This is not an action at law for the wrongful killing of the husband of defendant in error, but an action to relieve her of the wrongful acts done through the fraud of the administrator and the railway company, and to recover damages sustained by the death of her husband.

It is true that the cause of action is originally in the administrator, yet it is for the use and benefit of the widow and children, if any there be; and a court of equity ought to take notice of the real party in interest, and allow her sufficient standing in court so that she may be relieved of such wrongful acts. An administrator who is controlled by the wrong-doer is equivalent to no administrator. A court of equity is justified in assuming, under the circumstances of this case, that there was no administrator; that there was no one acting for the widow; the administrator was acting, not for the purpose of securing the legal rights of the widow, but for the purpose of preventing her from recovering for the loss of her husband. It appears to us, upon the broad principles of equity, that there ought to be a remedy for Mrs. Caton for the wrongs perpetrated upon her by the administrator and the railroad company. There are authorities

which tend to support her right to recover in this proceeding.

In Freeman on Judgments, section 250, it is said:

"According to the statement made by Wedderman in his argument in the celebrated case against the duchess of Kingston, and adopted by Lord Brougham in a subsequent case, to receive credit as an estoppel, a judgment or decree must be 'a judicial determination of the cause agitated between real parties, upon which a real interest has been settled. In order to make a sentence, there must be a real interest, real prosecution, a real defense, and a real decision. Of all these requisites, not one takes place in a fraudulent or collusive suit. There is no judge, but a person invested with the insignia of a judicial office is misemployed in listening to a fictitious cause proposed to him. There is no party litigating; there is no party defendant, no real interest brought in question.' It is also said that the principle of *res judicata* cannot be invoked to sustain fraud. Therefore, in an action against several judgment defendants upon a judgment, one of them may show that it was obtained by a conspiracy between the plaintiff and one of the defendants. One cannot, by procuring proceedings to be commenced against himself and controlling both the prosecution and defense, procure a judgment which will bar another action in favor of a party whose name has been used, but who in fact had no knowledge or control of the prosecution of the action."

And in section 336 it is said:

"Whenever a judgment or decree is procured through the fraud of either of the parties, or by the collusion of both, for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion by which the judgment or decree was obtained. . . ."

In Pomeroy's Equity Jurisprudence, section 231, the theory of equity is thus stated:

"The rule has already been stated, as one of the

foundations of the concurrent jurisdiction, that where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law. This principle is, however, of wider application, extending in its operation to both the concurrent and the exclusive jurisdictions; and it requires, therefore, a more full discussion. In its application to the concurrent jurisdiction, this principle forms, as has been already shown, one of the very foundations upon which that jurisdiction sometimes rests; and it is then something more than merely an occasion or condition of fact for the proper exercise of the jurisdiction. In other words, where the primary rights and cause of action of the complaining party are legal, and the remedy which he asks and obtains is of the kind given by courts of law, the concurrent jurisdiction of equity to interfere and adjudicate upon the controversy may exist by virtue of this principle; it may alone determine the inadequacy of legal remedies upon which the very existence of the concurrent jurisdiction always depends. It may be remarked that the instances in which the concurrent jurisdiction results from the operation of this principle, at least in the United States, are most frequently cases of accounting or of discovery followed by relief.''

As tending to support this view, see, also, *Klemp v. Winter*, 23 Kan. 699; *Busenbark v. Busenbark*, 33 id. 572, 7 Pac. 245; *Proctor v. Dicklow*, 57 id. 119, 45 Pac. 86; *Carter v. Christie*, 57 id. 492, 46 Pac. 964.

The judgment of the trial court will be affirmed.