First National Bank of Hempstead, N. Y., Sawyer Brothers, Inc., and Others, Appellants, *v.* Level Club, Inc., Peter Schmuck, Sixteen Other Individuals, and Irving Trust Company, Respondents.

First Department, May 27, 1938.

*R. Randolph Hicks* of counsel [*Lloyd F. Thanhouser* with him on the brief; *Satterlee & Canfield*, attorneys], for the appellants.

*Martin Lippman* of counsel [*Milton Winn* and *Emanuel Dannett* with him on the brief; *McLaughlin & Stern*, attorneys for Carl W. Stern; *Leon Lauterstein*, attorney for Ernest Katz; *Henry M. Flateau*, attorney *pro se* and for Edward H. Hyems; *John Bogart*, attorney *pro se; I. Gainsburg*, attorney for Tel Mel Bernstein, Eugene Hatschek, Max E. Meyers and Louis Pell; *Alexander Natanson*, attorney *pro se; Archibald Palmer*, attorney for Nathan M. Abramson; *Seymour B. Liebman*, attorney for Nathan A. Davis; *Morris Junger*, attorney *pro se*], for the respondents as above.

*Nathan L. Miller* of counsel [*Clarence J. Shearn* with him on the brief; *Philip J. Dunn*, attorney], for Peter Schmuck, respondent.

*Joseph P. Segal*, for the respondent Albert R. Sasserath.

*Murray Sanders* of counsel [*Rosenbaum & Sanders*, attorneys], for Alexander Rosenbaum, respondent.

*Charles L. Woody* of counsel [*James M. Gifford* with him on the brief; *Gifford, Woody, Carter & Hays*, attorneys], for Irving Trust Company, respondent.

CALLAHAN, J. Plaintiffs appeal from a judgment in favor of defendants on the merits, after a trial at Special Term, New York county.

The action is one for rescission against the defendant Level Club, Inc., and for damages for deceit against the other defendants. It is based on alleged false representations contained in a letter set forth in a prospectus relating to an issue of $750,000 of second mortgage notes sold by the defendant Level Club, Inc., to plaintiff Sawyer Brothers, Inc., and resold by the latter to the other plaintiffs. The letter was signed by the defendant Schmuck, as president of the club. It was prepared by the representatives of Sawyer Brothers, Inc., and submitted to the attorney for the club, defendant Rosenbaum, who transmitted it to defendant Sasserath, secretary of the club. Sasserath presented it to Schmuck. After signature by Schmuck, the letter was printed as part of a prospectus issued by Sawyer Brothers, Inc.

At the time of the writing of the letter, Sawyer Brothers, Inc., were already under contract to purchase all of the notes. The letter was drawn up to carry out a provision in the contract requiring the club to furnish a letter concerning its financial affairs, in order to aid Sawyer Brothers, Inc., to resell the notes.

This court reversed a former judgment in favor of the defendants, based upon a nonsuit, holding that on the record then before us a *prima facie* case had been established. (See 241 App. Div. 433.) Certain material statements contained in the prospectus letter are set forth in our former opinion. This court also set forth therein its views concerning the meaning that might be ascribed to such statements, and our conclusion as to the probative force of the proof concerning the falsity thereof.

Appellants now contend that what was said by this court in that opinion constituted the law of the case, and amounted to a construction of the prospectus which was required to be followed on the second trial.

What we said in our former decision must be construed in the light of the question then before us, which was whether a *prima facie* case had been established by the plaintiffs. We were not construing a contract, but determining whether false representations were contained in a selling prospectus. On the first appeal, plaintiffs were entitled to the most favorable inferences that might be drawn from the proof, including the documents involved. Upon the second trial, the issue of fraud was determined on the merits. The record now before us is substantially different from that previously presented.

The portion of the letter concerning which the principal dispute as to construction arises is the following: " Payments on these subscription agreements are being regularly made in an amount in excess of the amount needed to pay the interest on this entire issue

of $750,000 Collateral Serial Six Percent (6%) Coupon Notes and to retire $100,000 face value every six months."

Specifically, the dispute concerns the proper antecedent of the word " these " in the quoted sentence. Preceding that sentence and in the same paragraph were a number of statements relating to the subscription agreements. They set forth that the notes were to be secured by the assignment to the trustee of all undelivered debentures of the club amounting to approximately $800,000, and all unpaid subscription agreements for such debentures then in the hands of the club or to be thereafter received. They state that each member of the club was obligated to purchase at least one $500 debenture bond, for which he might pay either in cash or installments. They set forth that out of a total authorized issue of $2,000,000 of debenture bonds, approximately $1,600,000 had been subscribed for and had been either fully or partly paid for. Then followed the disputed sentence, that payments on " these " subscription agreements were being regularly made, etc.

From the figures mentioned, it is plain that $1,200,000 of the total issue of $2,000,000 had been delivered to members; that of the remaining $800,000, approximately $400,000 of debentures had been subscribed for, but the subscription price thereof remained unpaid. The remaining $400,000 thereof had not been subscribed for.

Plaintiffs contend that the antecedent of " these " in the disputed sentence was the $400,000 of subscriptions on hand which had not been paid for in full.

Defendants contend that " payments on these subscription agreements " was intended to relate to the experience of the club in collecting the $1,600,000 on all subscriptions which had been wholly or partly paid for.

On the present trial, on cross-examination, several of the plaintiffs conceded that they had construed the disputed portions of the letter in the sense contended for by the defendants. In addition, the evidence offered by defendants and their witnesses as to the prospectus letter was shown by those who had to do with its preparation, to contain only statements that were substantially true.

There was nothing in our former opinion which amounted to a holding that there was no ambiguity in the prospectus letter. The essential question presented on the former appeal was whether the purchasers of the notes had established *prima facie* that the statements contained in the letter, considered most favorably to plaintiffs, were calculated to deceive an ordinary buyer of the notes. We held that so considered they were calculated to deceive, and that, therefore, a *prima facie* case had been established. Upon the present proof, considering the whole document and the admissions

made by the various plaintiffs on cross-examination as to the construction of it, as well as the testimony of defendants' witnesses concerning its preparation, we find that the prospectus letter did contain an ambiguity with reference to the meaning intended to be conveyed by the sentence in question. In the light of the present testimony, we find that the court at Special Term was justified in construing the clause in dispute to relate to the past experience of the club in selling the $1,600,000 of debentures.

In view of such construction, no false representations were established, for it was proved that in previous years sums actually collected on the sale of these debentures averaged from $20,000 to $25,000 per month.

Even though the appellants' contention concerning the construction of the prospectus was upheld, we would be required to affirm the present judgment dismissing plaintiffs' complaint for the reasons hereinafter stated.

Plaintiffs' claim against those defendants, other than Schmuck, Sasserath and Rosenbaum, was, in substance, that they had aided and abetted in the perpetration of a fraud, in that they had knowledge of the contents of the prospectus letter and of its falsity. Such knowledge was an essential element of plaintiffs' case. On the present trial the evidence justified the finding made at Special Term that none of the defendants, other than the three mentioned, had any knowledge of the issuance of the prospectus letter prior to the time that the plaintiffs purchased the notes. No purpose will be served by reviewing the proof in regard to this phase of the case.

This leaves only the question of liability of defendants Schmuck, Sasserath and Rosenbaum. In determining such liability, consideration must be given to the form of the present action and the proof required to establish a right to recover therein.

As previously pointed out, the action is for rescission and damages. It is based on the legal theory approved of by the Court of Appeals in *Mack* v. *Latta* (178 N. Y. 525). In that case the plaintiff had subscribed to $500,000 worth of stock of defendant corporation, upon misrepresentations of two individual defendants, the president and a director of the corporation. Plaintiff, having paid $100,000 on his subscription, sued for rescission against the corporate defendant, for an injunction against suits to collect the balance of $400,000 and for damages for deceit against the individual defendants. That form of action was upheld on the ground that it would avoid a multiplicity of suits. The Court of Appeals said that, after plaintiff established his right to rescission and showed that the corporate defendant had no assets or insufficient assets to assure the return of the $100,000 paid in, plaintiff would then have a cause of action against the individual defendants based on deceit for the sums

uncollected from the corporate defendant. In order to avoid a number of suits the court permitted one action to be brought seeking all the necessary relief.

In the present case we have a situation which differs materially from that involved in *Mack* v. *Latta* (*supra*). Here the securities were purchased by Sawyer Brothers, Inc., who resold one-half of them to Cullen & Drew, who were bankers like themselves. The bankers resold the notes to various individuals and institutions, who are the remaining plaintiffs in this case. In the absence of any contractual relation between such remaining plaintiffs and the Level Club, Inc., those plaintiffs would have no right to rescind the contract of sale. Recognizing this, all of such remaining plaintiffs, in their separate causes of action, set forth that Sawyer Brothers, Inc., joined with them in seeking rescission. It is plain, however, that any rights to rescission rested entirely on the existence of such right in Sawyer Brothers, Inc., and that plaintiffs would have no right to rescind unless it was deceived by some false representation made.

In our former opinion (at p. 444) we said: " On a new trial the court will be able to determine from the evidence whether Sawyer Bros., Inc., were responsible for any of the fraudulent representations made to the public as an inducement to sell the notes in question. If it should be established that they were actual participants in the fraud, they would at least be precluded from personally recovering against defendants in this action."

Sawyer Brothers, Inc., at the present time hold only a small portion of the notes.

We find ample evidence in the present record to show that Sawyer Brothers, Inc., through their representative, Eaton, was cognizant of all of the facts with respect to the subscription agreements and clearly understood that the reference to the club's ability to amortize the notes referred to the past experience in collecting the $1,600,000.

Eaton admitted on the stand that he had been told that of the $2,000,000 of debentures $1,200,000 had been taken up by members, leaving $800,000 undelivered, and that of the $800,000 he knew that approximately $400,000 had been subscribed for by persons whose subscriptions were considered good. He further admitted that payments on the subscription agreements by club members had been made in the past at the rate of $20,000 to $25,000 a month, and that it was from such payments that the club had received the $1,200,000 collected. He also admitted that he knew that only new members were obligated to take the debentures. He said that he told these things to Mr. Pratt, the attorney for Sawyer Brothers, Inc., who drew the prospectus letter.

Pratt admitted in his testimony that he had received the information above set forth from Eaton, except that he denied that Eaton had told him that the requirement as to subscriptions applied only to new members. However, in a letter sent by Cullen & Drew (See Exhibit 61), we find that the bankers were aware of the fact that only new members were required to subscribe.

Though Eaton denied that he was familiar with conditions concerning collections on the subscription agreements, the defendants produced numerous witnesses who testified that Eaton, with several assistants, had spent a number of days in the Level Club examining its records, including the cards upon which the subscription agreements were printed, and the records showing payments made thereon. These witnesses testified that Eaton, acting on such an examination, set aside various cards and excluded them from those assigned.

Knowledge acquired by Eaton would, of course, bind Sawyer Brothers, Inc., for he had charge of floating the issue for it.

Unless defendants' witnesses are to be discredited, we have a situation in which Sawyer Brothers, Inc., not only were not deceived concerning the representations contained in the prospectus letter, but were thoroughly familiar with all of the facts concerning the club's resources, and the condition of the subscription agreements offered as security.

Considering the probabilities of the conflicting claims concerning the knowledge of Eaton, we must remember that the Level Club, Inc., had sold the notes to Sawyer Brothers, Inc., before the prospectus letter was drawn up, for the prospectus letter was dated February 23, 1928, whereas Sawyer Brothers, Inc., had bought the securities under a contract dated January 31, 1928. Neither the club, nor its officers, had anything to gain by deception. Sawyer Brothers, Inc., having the notes on their hands, were faced with the necessity of reselling them. Further, it seems entirely improbable that Sawyer Brothers, Inc., would have risked the obligation to pay their own money for such notes unless they had made a careful investigation of the club's affairs.

In the face of these circumstances, and considering defendants' proof on the present trial, we are of the opinion that the trial court was justified in crediting defendants' witnesses, and in finding that Eaton was fully acquainted with the true facts and that Sawyer Brothers, Inc., were not deceived in purchasing the bonds. Under the circumstances, Sawyer Brothers, Inc., would have no right to rescission. (See Black on Rescission [2d ed.], § 121; *Long* v. *Warren*, 68 N. Y. 426; *Schumaker* v. *Mather*, 133 id. 590.) It follows, as a matter of course, that Sawyer Brothers, Inc., could recover no damages based on deceit.

The question that remains is whether the other plaintiffs may, in an action based on rescission, recover damages for common-law deceit, where no right to rescind ever existed. It is well settled that, in an action for rescission, brought in a court of equity, where it appears that such rescission has become impossible, as distinguished from improper, the court may grant money damages. (See *Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.*, 230 N. Y. 316.) The basis for this rule is that equity will adapt its relief to the exigencies of the case, to the extent of rendering a personal judgment, in order to prevent a failure of justice. This rule, however, is applied to those situations where the basis of fact upon which the equitable relief is sought has been made out, but, for some reason, it becomes impracticable to grant such relief. Where, as here, it appears that in fact there never was any ground for such equitable relief, the sole remedy is by an action at law for damages. (See *Dudley* v. *Congregation, etc., of St. Francis*, 138 N. Y. 451.)

Assuming that the doctrine of *Mack* v. *Latta* (*supra*) applies to a case like the present, where claims for damages are asserted by plaintiffs, who are strangers to the contract, plaintiffs, nevertheless, are met with the further obstacle that the proof discloses that no right to rescind ever existed in favor of any plaintiff. Therefore, there never was any right to come into equity. If the action might, nevertheless, be continued by the remaining plaintiffs as one at law, many legal difficulties would arise such as the questions of the right to a jury trial, varying rules of damages, etc. We, accordingly, hold that in an action such as that approved of in *Mack* v. *Latta* (*supra*), the right to rescission is an essential element to recovery. As the proof herein demonstrated the absence of such right, the complaint was required to be dismissed even though the prospectus is construed as contended for by plaintiffs.

Under the circumstances, it becomes unnecessary to discuss the remaining questions in the case concerning whether the statements in the prospectus were made on information, or were assertions of positive knowledge; and the question collateral thereto, as to whether the defendants, who were officers of a large club, might show that they were honestly mistaken concerning the assertions made. On these questions, as well as those concerning ratification by the plaintiffs, we think it sufficient to say that the findings of fact made at Special Term appear to be justified by the proof.

The judgment should be affirmed in all respects, with costs.

O'MALLEY, TOWNLEY and COHN, JJ., concur; MARTIN, P. J., dissents.

Judgment affirmed, with costs.