No. 35,318

W. H. THOMPSON, *Appellant,* v. H. W. WADE, *Cross-appellant,* C. L. PRICE and M. M. PRICE, His Wife, KENASKA OIL COMPANY, WINNER OIL COMPANY, KANFIELD OIL COMPANY and NEBRASKA-WYOMING OIL COMPANY, *Appellees.*

(121 P. 2d 189)

Opinion filed January 24, 1942.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *J. R. Mayall,* all of Wichita, for the appellants.

*Robert C. Foulston, George Siefkin, Samuel E. Bartlett, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was a suit in equity. It was instituted by W. H. Thompson, for the purpose of establishing a joint enterprise with respect to all ventures between himself and the defendants, H. W. Wade and C. L. Price, in the oil and gas business, to enjoin the transfer of properties and for an accounting. M. M. Price, the wife of C. L. Price, was made a party defendant, as were also a number of corporations. Title to some of the properties stood in the name of defendant corporations. M. M. Price and the corporations were merely nominal parties and need not be considered. The principal

defendant, C. L. Price, against whom the desired relief was sought, prevailed. The appeal was taken by only the defendant, H. W. Wade, who was also a cross petitioner and who was in fact a plaintiff. The relief he sought, under his cross petition, was identical with that sought by the plaintiff, Thompson. The appeal is from the judgment and order overruling the motion for a new trial.

The pleadings are quite voluminous and we shall narrate only the substance of such portions thereof as are necessary to present the contentions of the parties. Thompson filed his petition which in substance alleged: In the fall of 1929, he, Wade, and Price entered into an agreement, partly oral and partly in writing, in the state of Nebraska, whereby they agreed to engage in the oil and gas business generally, and particularly in exploring for oil and gas and for other minerals in various states, in obtaining oil and gas leases, promoting the drilling of wells, the procurement of royalty interests and other mineral interests and other property necessary and incidental to the business; Thompson and Wade were to furnish the moneys and Price was to contribute his experience, effort and time, and any funds which he might obtain in the course of the business; the property was to be owned and the profits divided upon the following basis: 50 percent to Price and 25 percent each to Wade and Thompson; Price was given the general management and control of the business; plaintiff performed his obligations under the contract; he kept no itemized account of moneys advanced; among the holdings were also properties in Barton and other Kansas counties, and properties in the state of Wyoming; title thereto was taken in the name of Price and the defendant corporations; since 1935, Price promised to account to plaintiff but had failed to do so; unless defendants were restrained they would dispose and transfer the properties; plaintiff was without an adequate remedy at law; Price should be required to make an accounting.

Plaintiff prayed for a temporary and permanent injunction against each of the defendants, for an accounting by Price and for a conveyance to him of his proportionate share and for all other equitable relief.

The answer of the defendant, Price, in substance alleged: The contract alleged by plaintiff was never made; the agreement which was made concerned primarily oil and gas leases and the drilling of a well in the vicinity of Red Cloud, Neb.; other properties were not acquired with money obtained from Thompson and Wade, or

from proceeds derived from any venture with them, but were acquired by himself and the defendant corporations with independent funds; in 1935 Thompson made demand upon him, Price, for an interest in the Barton county properties with which he refused to comply for the reason Thompson had no interest therein; in 1930 Wade and Thompson demanded a settlement of the venture at Red Cloud, Neb.; an accounting was had and the amounts due to each Thompson and Wade were determined; the total amount determined to be due to them was $12,363; Price did not have the cash and it was agreed he should give them a note for that amount, which he did; it was agreed that in addition to the note Price should cause 70 shares of stock in a Delaware corporation to be issued to each Wade and Thompson; it was agreed the note should be made payable to and be delivered to Wade; Price fully performed under the settlement agreement; Price was also required under the agreement of settlement to pay some other items of indebtedness (which were listed), and to have certain shares of stock in the Delaware corporation issued to some other parties; Price fully complied with all the terms of settlement demanded by Thompson and Wade; in 1931 Wade and Thompson became dissatisfied with the settlement they had made; a substitute settlement in writing was made whereby Thompson and Wade were to receive and did receive shares of stock in a Colorado corporation, which they had demanded that Price organize; the agreement was signed by Wade but not by Thompson; the agreement was, however, agreed to and confirmed by Thompson; pursuant to the latter agreement Wade returned the $12,363 note and the stock which Thompson and Wade had received in the previous settlement; the Colorado corporation failed; Thompson and Wade at no time contributed to the oil venture in Barton county; Price incurred great financial liability and risk in connection with the drilling of the wells in Barton county; Thompson and Wade never offered to share any of the responsibilities or liabilities with regard to the Barton county venture until oil had been discovered on some of those leases and had enhanced their value; Thompson and Wade were barred by laches and are estopped from claiming any interest in the Barton county or Wyoming leases; the action is barred by the statute of limitations of the state of Kansas.

The amended reply of plaintiff consisted of a general denial and a specific denial of any settlement and a denial that the $12,363 note had been paid. He asserted the stock in the Colorado corpora-

tion was delivered to him by Price, was no part of the settlement, and was not accepted by him. He alleged the Colorado corporation was never fully organized and the financing thereof had not .been completed as Price claimed to have agreed to complete the same. He also alleged the Nebraska contract was void.

Wade filed an answer and cross petition. His answer was an admission of everything alleged in Thompson's petition. His cross petition against Price et al. was an incorporation by reference of Thompson's petition and a reiteration of the facts alleged in that petition and in Thompson's reply. Wade also alleged that the only reason for the delivery of the note in the sum of $12,363 to Price was that Price had promised he would execute a larger note in lieu thereof so as to include approximately $1,000 to cover money and property which he (Wade) and plaintiff had advanced. He also alleged Price had failed to deliver the larger note and had obtained the other note through fraud and misrepresentation. Wade prayed for judgment "as prayed for in (Thompson's) amended petition and for general equitable relief."

Upon the issues so drawn the case went to trial as an equity case without a jury. It is sufficient to say that the various parties introduced evidence which supported or tended to support the allegations of their pleadings. At the conclusion of the trial the court announced that plaintiff (Thompson) and cross petitioner (Wade) had not substantiated their case. Thompson and Wade then filed separate motions for judgment on the $12,363 note. They also filed motions for a new trial. Affidavits were offered in support of the latter motions. The motions were denied and judgment was entered for all defendants except H. W. Wade. From the judgment and the rulings on the motions, the defendant Wade appeals.

Appellant's principal contention is the trial court erred in refusing to render a judgment in favor of him and Thompson on the $12,363 note. It is appellant's theory that when all parties are before a court of equity it is the duty of the court to completely dispose of all matters in order to avoid a multiplicity of suits and in support thereof cites *Railroad Co. v. Caton,* 9 Kan. App. 272, 60 Pac. 544; *Martin v. Martin,* 44 Kan. 295, 24 Pac. 418; *Brown v. McCrie,* 77 Kan. 230, 94 Pac. 144; *Reed v. Bostleman,* 97 Kan. 633, 156 Pac. 718; *Public Service Comm. v. Brashear Freight Lines,* 312 U. S. 621; 85 L. Ed. 1082; 21 C. J., p. 134, § 117, p. 138, § 118, p. 662, § 845.

Appellee concedes such to be the general rule where a party seek-

ing equitable relief has actually established a right to *equitable* relief in some form, but he contends that where a party has failed wholly to establish any right to some *equitable* relief and has failed also to show he has no adequate remedy at law, as in the instant case, courts of equity will not convert a purely equitable suit into an action at law and thereby deprive a litigant of his legal right, as for example, to a trial by jury. Nor does appellee contend a court of equity may, under no circumstances, render a monetary decree in lieu of equitable relief. He does, however, contend there is a clear distinction between cases where a plaintiff actually establishes a right to equitable relief, but the equitable relief prayed for is impracticable or impossible, and a case where a party fails to make out a right to any equitable relief whatsoever. In other words, appellee contends there is a well-established exception to the general rule relied upon by appellant where, as here, appellant has completely failed to establish his right to any equitable relief.

In the instant case the court upon conflicting evidence found appellant had not established his case for equitable relief. The finding is based upon facts which support it. We are not concerned with facts which support, or tend to support, a contrary finding. Manifestly, we cannot disturb the finding. It should be observed the request for judgment on the note, if proper and allowed, would not be in addition to or an incident of some equitable relief which was granted. Can appellant then, as a matter of right, demand that a court of equity convert the entire action for an accounting of all matters involved into a single action for money judgment on the note alone and thereby deprive its maker of a trial by jury, without any showing that appellant has no adequate remedy at law? In 19 Am. Jur., Equity § 132, it is said:

"The rule which permits the court of chancery to retain jurisdiction of litigation and finally dispose thereof is limited in its application to cases in which equitable relief has been administered pursuant to the prayer of the bill or in which the jurisdiction of the court has been rightfully invoked. If the facts which are relied on to sustain equity jurisdiction fail of establishment, the court may not retain the case for the purpose of administering incidental relief. It is said that an equitable right must be both averred and proved as a prerequisite to the determination of adjudication of a purely legal right. The prevailing view is that where jurisdiction has not been established, the court may not award damages or enter any decree except for costs.

"If the rule (were) otherwise, it has been argued, a litigant, by a pretended claim to equitable relief, might deprive his opponent of advantages incident to an action at law—for example the constitutional right of trial by jury." (p. 132.)

To the same effect see 21 C. J., p. 137, § 117, p. 140, § 119, p. 142, § 123; 1 Pomeroy's Equity Jurisprudence, 4th ed., § 237, p. 372; 19 L. R. A., n. s., Anno. p. 1064. In the annotation cited the author said:

"Although a few cases are found which can be characterized only as variants from the general rule, the preponderance of opinion in relation to the subject under consideration clearly seems to be that where a case for relief in equity fails, a court of equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless, indeed, it appears that the remedy at law will be inadequate. Otherwise, as the courts have frequently pointed out, a litigant, by a pretended claim for equitable relief, might deprive his opponent of advantages incident to an action at law." (p. 1065.)

In *First Nat. Bank of Hempstead v. Level Club, Inc.*, 254 App. Div. 255, 4 N. Y. Supp. 2d 734 (1938), the distinction stressed by appellee is ably discussed. It was there stated:

"It is well settled that, in an action for rescission, brought in a court of equity, where it appears that such rescission has become impossible, as distinguished from improper, the court may grant money damages. See *Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*, 230 N. Y. 316, 130 N. E. 306. The basis for this rule is that equity will adapt its relief to the exigencies of the case, to the extent of rendering a personal judgment, in order to prevent a failure of justice. This rule, however, is applied to those situations where the basis of fact upon which the equitable relief is sought has been made out, but, for some reason, it becomes impracticable to grant such relief. Where, as here, it appears that in fact there never was any ground for such equitable relief, the sole remedy is by an action at law for damages, . . ." (p. 740.)

See, also, *Toucey v. New York L. Ins. Co.*, 102 Fed. (2d) 16, 122 A. L. R. 1415.

In the instant case, neither the plaintiff (Thompson) nor the appellant cross petitioner prayed for judgment on the note. The pleadings joined issues on the question of right to equitable relief and the case was so tried by the court, without a jury. It is clear the parties all regarded the issues as being equitable in character.

Appellant urges the note was injected by appellee and that he cannot complain concerning a money judgment which might now be rendered thereon by the court. The real question is whether the trial court erred in refusing to entertain jurisdiction of the legal issues involved with respect to liability on the note where no right to equitable relief was established. A mere glance at the instant record clearly discloses the instant action was in no sense intended by the plaintiff or appellant to constitute an action on the note. A mere glance at the record further discloses that if an action had

been instituted on the note various legal defenses probably would have been asserted thereto. Appellee would have been entitled to have all the factual issues, upon which liability depended, determined by a jury under proper instructions. Had appellant established his right to some equitable relief, the trial court still would have had the right to exercise its judicial discretion as to whether it would retain jurisdiction to try issues involved with respect to liability on the note, under all the circumstances in the case. In 21 C. J. 140, the writer, after stating the general rule relied upon by appellant, states:

"But this rule is not of universal application; whether the court will so proceed to a final determination of legal rights is a matter of sound discretion, which will ordinarily be exercised by retaining the cause and granting any necessary legal remedies. But if a trial of the legal matters by jury is essential to relief, or if the issue is peculiarly more appropriate for trial by jury than by judge, equity will ordinarily decline jurisdiction as to those matters leaving the parties to their legal remedies." (p. 140.)

In the instant case appellant made no case for equitable relief and the trial court was correct in leaving the parties to their legal remedies with respect to the note. In view of this conclusion it is unnecessary to discuss other contentions advanced by appellant.

An examination of the post-trial motions for judgment on the note and for a new trial discloses they were properly overruled.

The judgment is affirmed.