No. 45,588

LEHIGH, INC., a Corporation, *Appellee*, v. NICK S. STEVENS and ARTHUR S. STEVENS, d/b/a Cigarette Service Company, *Appellants*.

LEHIGH, INC., a Corporation, *Appellee*, v. NICK S. STEVENS, *Appellant*.

(468 P. 2d 177)

Opinion filed April 11, 1970.

*Larry A. Withers,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for the appellants.

*Gerrit H. Wormhoudt,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal encompasses two lawsuits which were tried together and have been consolidated for hearing in this court.

Both actions were filed by Lehigh, Inc. to recover balances due on five promissory notes payable in installments, two notes being executed by Nick S. Stevens and Arthur S. Stevens, doing business as Cigarette Service Company, and the other three by Nick S. Stevens, individually. The trial court entered judgment in favor of plaintiff in both cases and the defendants have appealed. Throughout this opinion the appellants will be referred to collectively as defendants, or Stevens, and the appellee as plaintiff, or Lehigh.

Lehigh, Inc. is a Pennsylvania corporation engaging in the production of vending machines. In 1956, the company began to fabricate automatic coffee vending machines bearing the trade name Take-A-Break.

On March 6, 1958, Nick Stevens purchased a number of the vending devices from Lehigh and in connection therewith executed a promissory note to Lehigh in the amount of $4,709.88, payable in twenty-four monthly installments. Four subsequent purchases of Take-A-Break machines were made later during the same year, all being evidenced by similar installment notes executed by de-

fendants and dated respectively, August 1, August 1, August 14, and August 29. The four latter notes were in the amounts of $5039.28, $1292.04, $4163.04 and $3654.12. At the time each note was executed a conditional sale contract was drawn up covering the machines involved in the specific transaction. Default in payment of the first note, which was dated March 6, 1958, occurred February 21, 1959, and defaults in payment of the remaining four notes took place throughout July and August of 1959.

On March 24, 1962, suits were filed against the defendants. In answer to the petitions filed by Lehigh the defendants admitted execution of all five notes and conceded that balances were due thereon, as set out in the petitions. However, the defendants alleged that the vending machines had been misrepresented; that they were defective; and that they would not function or operate for their intended purposes. Alleging breach of both express and implied warranties, the defendants asserted they were not liable on their notes and prayed plaintiff be denied recovery thereon.

By way of cross petition in each case the defendants alleged they had rescinded the sale contracts as of September 1, 1959, and were holding the vending machines for the benefit of Lehigh. Accordingly, they prayed for the return of all payments which had been made on their several notes.

Both cases were tried to the court which, after an extended hearing, made extensive findings of fact which included the following: That defendants purchased approximately ninety Take-A-Break machines, all being covered by conditional sales contracts and evidenced by promissory notes; the first note was executed on or about March 6, 1958; that fifty-six of the machines were defective; that defendants were aware of the defects by at least April or May, 1958, but continued to buy additional machines until August, 1958, and continued to pay installments due on some of the notes until August, 1959; that no effective notice of breach of warranty was given to plaintiff until after suit was filed; and that the first attempt to rescind the contracts and tender back the machines was made after suit was filed.

Conclusions of law were entered by the court to the following effect: That as to fifty-six of the vending machines there was a material breach of an implied warranty of fitness for the ordinary purposes for which they were to be used; that such breach was waived when defendants purchased additional machines after

knowledge of the defects and continued making payments for more than a year after knowing of the defects; that rescission must be made with reasonable promptness and accompanied by an effective tender of the consideration involved; that no effective attempt to rescind the contracts was made by Stevens; and that any damages sustained by Stevens were remote, speculative and not supported by competent evidence.

Pursuant to the findings and conclusions the trial court entered judgment in favor of Lehigh for the balances due on the five notes, plus interest. The defendants thereupon appealed.

The points raised by defendants in this appeal are principally directed toward the trial court's findings that no rescission had been effected and that Stevens had waived Lehigh's breach of warranty. Before discussing these points we first note Lehigh's position that the appeal is moot, a viewpoint not shared, we may add, by Stevens.

The rationale of Lehigh's argument is two-pronged. First it is contended that the defendants, both in their pleadings and at the trial, elected to rely on rescission, thereby precluding themselves from claiming damages for breach of warranty. Hence, Lehigh says that waiver was not in the case, despite findings of waiver made by the court. Second, Lehigh says the defendants are not now challenging the court's conclusion that rescission had never been effected, since they have not briefed this point but have switched to the question of waiver. Accordingly, the plaintiff maintains that the trial court's conclusion that an effective attempt to rescind was not made by Stevens, presently stands unassailed.

We do not entirely agree with either diagnosis. As to the doctrine of election of remedies, it may be said in general that it precludes a party who has elected to pursue a particular remedy with full knowledge of the facts, or with means of knowing them, from later seeking to pursue a different and inconsistent remedy. (*Taylor v. Robertson Petroleum Co.*, 156 Kan. 822, 137 P. 2d 150.)

In the present case, however, the defendants, as we evaluate their pleadings, first asserted a claim for damages resulting from Lehigh's breach of warranty in an amount offsetting their indebtedness on the notes and second, by cross petition, asked for rescission. Granting that a litigant may not rescind a contract for breach of warranty and in a later action seek recovery of damages for the same breach,

(*Christy v. Gaylord,* 158 Kan. 753 150 P. 2d 164), these defendants have pleaded both remedies in the same lawsuit.

In *Lindsay v. Keimig,* 184 Kan. 89, 334 P. 2d 326, this court was faced with a similar situation, in which the plaintiff had included two causes of action in the same petition, one being for rescission of a contract of sale, the second seeking to recover damages sustained by reason of alleged fraud in the transaction. In reversing the trial court's order sustaining the defendant's motion for judgment on the pleadings, this court stated:

". . . [W]here a party alleges two inconsistent causes of action or remedies in the same petition there is no election as to either, but while the case is pending or at the time of trial the plaintiff may be required to elect between them. . . ." (p. 92.)

No motion was filed by Lehigh to require defendants to make an election in this case, nor did the trial court make any order to such effect. Nor can it be said with certainty that Stevens proceeded solely on the theory of rescission during the trial, since evidence adduced as to the defective machines was equally as germane to an action for damages as to an action for rescission. And this is true despite Stevens' failure to establish, by use of proper standards, the amount of damages sustained.

Just a word concerning Lehigh's contention that the defendants do not presently challenge the trial court's finding that Steven made no effective attempt to rescind until after suit was filed. Inexplicably, no mention of this finding is found in Steven's brief, nor is the subject of rescission even touched on therein. However, one of the grounds of error specified by the defendants in their statement of points is that the trial court erred in making such a finding. Moreover, rescission was frequently mentioned by defense counsel during oral argument. We cannot infer the issue was abandoned.

We shall proceed to consider the points raised by the defendants.

The law is clear that where there has been a breach of warranty as to the fitness of personal property, rescission is one of the remedies open to the purchaser. (*Lyman v. Wederski,* 95 Kan. 438, 148 Pac. 642.) However, a purchaser must exercise his right to rescind promptly and must, within a reasonable time, return or offer to return the property to the seller. The basics of this rule are stated in *Brandtjen & Kluge, Inc., v. Lucas,* 153 Kan. 138, 109 P. 2d 197, in these words:

"The general rule with respect to personal property is that where a purchaser of a machine desires to rescind the contract by reason of a failure of

warranty, he must, within a reasonable time and as a condition precedent to rescission, return or offer to return the machine; and where with knowledge of the failure he retains possession and uses the machine, he waives his right to rescind." (Syl. ¶ 1.)

Furthermore, what is a reasonable time under the confronting circumstances is a subject for determination by the trier of facts. We find this principle also set out in the *Brandtjen* case on page 142, where it is said:

". . . Whether under all of the circumstances the purchaser retained possession an unreasonable time, and whether he waited too long to rescind, were questions of fact for the jury. . . ."

Keeping these axioms in mind we cannot say the trial court erred in concluding there has been no effective attempt to rescind. The record is vague, at best, as to material dates. There is evidence that defendants used some fifty machines for their own purposes for some period of time, the exact length of time being undisclosed. One of Lehigh's officers testified that in April and May, 1959, he talked by phone with Nick Stevens at which time no complaint was made of any defective machines.

The only evidence we are able to find in the entire record with respect to a tender, or offer to return the machines, appears in connection with the testimony of the defendant, Nick S. Stevens. At one point in his testimony Mr. Stevens said he never tendered *any* of the machines purchased on August 29, 1958, (being twenty-four in number), while earlier he testified that in *approximately* 1959 or 1960 his attorney made a tender to plaintiff's counsel, and he himself had verbally tendered *all* machines before that. The record contains a stipulation that defendants' counsel would testify he had made a tender, but there is no evidence whatever in the record as to the date thereof.

Much of Nick Stevens' testimony as to tender may be characterized as being vague as to dates, indefinite as to occurrences, and contradictory in nature. Our rule that negative findings are seldom to be set aside on appeal appears to be peculiarly applicable to the circumstances disclosed by this record. A trial court is not obliged to give credence to testimony which, in its honest opinion, is not reliable, even though the court may not arbitrarily or capriciously ignore the testimony of any witness. (*Collins v. Merrick*, 202 Kan. 276, 448 P. 2d 1; *Johnson v. Stucker*, 203 Kan. 253, 453 P. 2d 35.)

An attempt to rescind a contract must be timely made if it is to be effective. In our opinion the evidence in this case does not com-

pel a finding that rescission was effectuated and the trial court did not err in its conclusion.

The trial court further found that defendants waived any breach of warranty on Lehigh's part. As to this finding the defendants first argue the court erred in considering waiver at all, since waiver had not been pleaded by Lehigh. It is true that waiver was not mentioned in plaintiff's reply, and the defendants correctly call our attention to K. S. A. 60-208 (c) providing that waiver is an affirmative defense which must be pleaded. Our own cases also support this general proposition.

However the record discloses, and defense counsel conceded on oral argument, that evidence relating to waiver was admitted during the trial without objection on the defendants' part. This being so, we believe the trial court was justified in considering the issue of waiver and returning findings thereon. The appropriate rule is stated in *Forster v. Fink*, 195 Kan. 488, 493, 407 P. 2d 523, where it is stated:

"A party impliedly consents to the introduction of issues not raised in the pleadings by his failure to make timely objection to the admission of evidence relating thereto (1 A Barron and Holtzoff, Federal Practice and Procedure, Conforming to Evidence, § 449)."

In *Bowen, Administrator v. Lewis*, 198 Kan. 605, 426 P. 2d 238, this court, speaking on the same general topic, said this:

". . . The trial court has jurisdiction to decide only such issues as are raised by the pleadings or defined at the pretrial conference *with the limited exception of new issues raised by evidence to which there is no objection.* . . ." (Emphasis supplied.) (p. 612.)

Next, the defendants argue there was no basis for the trial court's finding of waiver, because Lehigh was constantly trying to correct defective machines and continuously assuring Stevens that the machines would be made to work.

The general rule as to waiver we find to be stated in *Cummings v. Sigerson*, 63 Kan. 340, 65 Pac. 639, as follows:

"One who purchases an article on time, under a warranty of quality of the thing purchased, and who voluntarily pays for it after discovery of its defects, cannot maintain an action to recover the payment made." (Syl.)

The *Cummings* opinion is in general accord with the rule set out in 77 C. J. S., Sales, § 105d, p. 807:

"In connection with other matters, such as acceptance of the property, retention and use thereof, and knowledge of the grounds for rescission, payments on or of the purchase price may give rise to a waiver or estoppel on the

part of the buyer; and it is fatal when made after the commencement of a suit by the buyer to rescind. . . ."

It is true that waiver may not be imputed to a vendee because of payments made by him on the purchase price of defective machinery after he becomes aware of the defect, where his continued payments have been induced by promises on the part of the vendor to remedy the defects and by the vendor's assurances that the machinery would be made to function properly. (See 77 C. J. S., *supra.*)

However, whether payments have been so induced is a question properly to be resolved by the trier of the facts. In the present case there was evidence from which the court could well conclude that the defendants' complaints did not extend beyond the latter part of 1958, while payments on their several notes continued well into August, 1959. There is evidence, also, that Stevens purchased additional machines several months after they became aware of imperfections. In our view the trial court's finding that whatever breach had occurred was waived by Stevens is supported by substantial competent evidence and, under our invariable rule, may not be overturned. (See cases in 1 Hatcher's Kansas Digest (Rev. Ed.) Appeal & Error, § 507.)

An additional contention is advanced that the evidence does not support the trial court's conclusion that whatever damages the defendants may have sustained are remote and speculative. This argument lacks merit. The measure of damages in an action based on breach of warranty is phrased in *Fox v. McKay Motor Co.*, 188 Kan. 756, 366 P. 2d 297, in this fashion:

"Generally speaking, the measure of damages for breach of a warranty is the loss directly and naturally resulting from the breach of warranty. Generally speaking, in the absence of evidence showing a greater amount of damage, the measure of damage is the difference between the value of the automobile involved at the time of delivery and the value it would have had if it had conformed to the warranty. . . ." (Syl. ¶ 6.)

While the purchase price of the vending machines appears in the record, no evidence is shown to have been introduced concerning the value of the machines as delivered, or the present worth of machines yet held by Stevens, which the evidence indicates still possess value.

Finally, the defendants assail a finding that Unicon, Inc., a distributor for Lehigh products, and the company through which defendants placed their first order for the machines, was not an

agent of Lehigh. We think the point is unimportant for two reasons: First, because the court found that Lehigh breached its warranty (no matter who made it) and second, because the record shows that whatever complaints were made to Unicon ceased many months before Stevens stopped paying their notes, and long before September 1, 1959, when Stevens alleged the contracts were rescinded.

In closing this somewhat protracted opinion we wish to observe it is unfortunate that this litigation, commenced in 1962, has been so long and drawn out. The reasons for the delay are not clearly shown. We trust, however, whatever the cause or causes may be, that they will not be duplicated in subsequent cases appearing before the court.

The judgment of the court below is affirmed.