No. 50,137

David W. Baker and Patricia K. Baker, *Appellants,* v. David L. Tucker and Tucker Enterprises, a Kansas Corporation, *Appellees.*

(605 P.2d 114)

Opinion filed January 19, 1980.

*B. L. Pringle,* of Topeka, argued the cause and was on the brief for the appellants.

*Leonard W. McAnarney,* of Lyndon, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Miller, J.: This is an appeal by plaintiffs, David W. Baker and Patricia K. Baker, from an order of the trial court which sustained the motion of the defendants, David L. Tucker and Tucker Enterprises, a corporation, to dismiss at the conclusion of plaintiffs' evidence. Plaintiffs also appeal from an earlier order of the court denying the parties a jury trial. There is some dispute whether David L. Tucker was a proper party defendant but that issue having never been reached by the trial court is not an issue before this court. We will refer to the appellees as defendants, or collectively as Tucker.

On August 1, 1976, plaintiffs entered into a contract with Tucker for the purchase from Tucker of certain lots in Carbondale and for Tucker to construct a dwelling house upon the lots. The construction contract provided, among other things, that plaintiffs could request changes in the plans and specifications as construction progressed, plaintiffs would provide certain fixtures and furnishings for the house and plaintiffs would do their own interior painting and decorating. The contract further provided time was of the essence and the completion and closing dates were January 1, 1977. Construction began and in December, 1976, it became apparent the construction would not be com-

pleted by January 1st. The parties then entered into a written modification of the contract whereby the date of completion was extended to January 12, 1977, and the date of possession and closing to February 20, 1977. The modification agreement also provided for liquidated penalty damages of $100.00 per day for each day the house remained uncompleted after January 12, 1977. On January 15, 1977, plaintiffs informed defendants of items not completed. Again on February 21, 1977, plaintiffs advised defendants of items not completed. On March 2, 1977, plaintiffs filed suit praying for rescission of the contract, damages and penalty money. Tucker answered alleging the delay, if any, was caused by acts of the plaintiffs; the delay, if any, was caused by conditions beyond the control of Tucker; and that Tucker had performed under the terms of the contract. Tucker counterclaimed seeking $55,000.00 damages plus future damages which might accrue. While it is not clear from the proceedings, it also appears from the answer and counterclaim that defendants originally sought specific performance of the contract with plaintiffs. Plaintiffs filed an answer to the counterclaim and subsequently filed an amended petition in which they sought rescission, special damages of $6,385.70, damages under the penalty clause of the contract modification in the amount of $4,700.00 and $7,000.00 additional damages as the increased cost, due to inflation, of purchasing a comparable house. No answer was ever filed to the first amended petition.

The trial court file next discloses that a pretrial order was filed April 11, 1978, referring to a pretrial conference apparently held July 11, 1977. The order was signed by counsel for the plaintiffs and the judge but not by counsel for defendants. On the same date, April 11, 1978, counsel for defendants filed an objection to the proposed pretrial order. On April 15, 1978, an order was filed which purports to cover a pretrial conference held April 11, 1978. This order was not signed by anyone. Defendants' original answer and counterclaim demanded a trial by jury, and plaintiffs assert that at the first pretrial conference they also requested a jury trial.

In December, 1977, the defendants sold the house and lots, which were the center of controversy, to third parties for a sum which plaintiffs assert was greater than the original amount contracted for by the parties. At the time of trial and at the time of

filing the various pretrial orders, the court as well as the parties knew the property had been sold. With the record and pleadings in this rather confused state, the matter finally came before the court for trial on April 17, 1978. Defendants insisted plaintiffs must elect whether they were seeking rescission or damages and asserted they could not recover both. Plaintiffs indicated they were proceeding upon rescission but that if rescission was not granted, they wanted their damages. The court, after extensive argument and discussion of the various pleadings and pretrial proceedings, determined that the action was one for rescission; that it would not allow a jury; and that it would bifurcate the trial and proceed to hear evidence only on the grounds for rescission. If rescission was granted, it would then take up the evidence relating to the restoration of the status quo.

Plaintiffs asserted three principal breaches by defendants which they contend were material and substantial enough to warrant rescission: (1) the living room bay window did not run all the way to the floor as required by the plans; (2) the upstairs hallway was 3 inches too narrow; and (3) the general delay in completion of construction. Testimony revealed plaintiffs had been aware of the defects in the bay window and upstairs hall since early in the construction phase and testified on cross-examination that their real complaint was the delay in getting the house finished. Plaintiffs attempted to introduce the testimony of the new owners of the subject property to show the property had been sold by the defendants on December 6, 1977, for a sum in excess of the amount in the contract between plaintiffs and defendants. Counsel for Tucker stipulated the property had been sold and objected to any further evidence about the sale. The objection was sustained. At the close of plaintiffs' evidence, the defendants moved for a dismissal. The court granted the motion and dismissed plaintiffs' action for the reason they had not proved a material breach by defendants which would justify rescission. Defendants then dismissed their counterclaim without prejudice. Plaintiffs appeal.

In its ruling the trial court found there had been substantial compliance with the terms of the contract by defendants; there was no material breach of the contract by defendants; defendants were ready, willing and able to complete the construction in February, 1977; plaintiffs, by the modification of the contract,

had an adequate remedy at law for the delay in finishing construction; and plaintiffs failed to present evidence warranting rescission. No comments, findings or conclusions were made respecting the sale of the property by the defendants during litigation.

In the recent case of *Whiteley v. O'Dell*, 219 Kan. 314, 548 P.2d 798 (1976), the late Justice Owsley set forth some basic principles which are relevant to actions for rescission of building contracts.

"It is not every breach which gives rise to the right to rescind a contract. In order to warrant rescission of a contract the breach must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement." p. 316.

"[In an action based upon equitable principles] it was within the inherent equitable power of the court to grant relief which would achieve justice and equity." p. 318.

"Rescission operates to extinguish the contract so that for all intents and purposes it never existed. It is generally held that a lawful rescission of a contract prevents recovery of damages for the breach." pp. 318-319.

"As a general rule, upon rescission of a contract the parties must be placed in substantially the same condition as when the contract was executed." p. 319.

Before proceeding further we pause to note that the cases and authorities have frequently confused the terms rescission, repudiation and restitution and many times have used them interchangeably. See Williston on Contracts, Third Edition Section 1454A, *et seq.* We do not deem it necessary nor advisable to attempt to clarify this confusion in this opinion.

We will now turn to the specific points asserted by plaintiffs in this appeal.

Plaintiffs' first point on appeal is that the trial court committed error in refusing to grant the parties a jury trial. All parties appear to concede that the case as it finally went to trial was one for rescission of the contract. An action in rescission is considered equitable, and it has long been the rule in this state that a litigant is not entitled to a jury as a matter of right in an equitable action. For an excellent review of the constitutional provisions, statutes, and principles controlling the right to a jury trial, see the opinion by Prager, J. in *Karnes Enterprises, Inc. v. Quan*, 221 Kan. 596, 561 P.2d 825 (1977). As stated in *Quan:*

"At common law and under the Kansas constitutional provisions in a suit in equity a party is not entitled to a trial by jury as a matter of right." p. 600.

Appellants' first point is without merit.

The next point raised by plaintiffs is that the trial court committed error in sustaining defendants' objection to the testimony of the purchasers of the real estate and the proffer of evidence which plaintiffs allege would have shown the sale of the property for a sum in excess of the contract price with the plaintiffs. Plaintiffs attempted to introduce the evidence for two reasons. First, they contend that the sale of the property in question by the defendants constituted an acquiescence in plaintiffs' rescission of the contract. Second, the evidence was offered to show that defendants had not suffered any damages as alleged in their counterclaim. Defendants on the other hand claim that the sale of the property was not an acquiescence in plaintiffs' attempted rescission but was done to mitigate damages which were accruing daily to defendants who had substantial sums of money tied up in the newly constructed house. The trial court was of the opinion that the sale, occurring ten months after suit was filed, was too remote in time to constitute an acquiescence in the attempted rescission of the contract. Counsel have cited no cases squarely on point and our research has failed to disclose any. In view of the decision reached later in this opinion, the court should have admitted such evidence in order to make a final determination of all the issues.

Plaintiffs' third point also has to do with the refusal of the court to admit certain evidence. Plaintiffs attempted to introduce testimony that defendants had orally represented to them that there would be no other houses built in the neighborhood that would vary in value more than $5,000.00 from that of the house being constructed for plaintiffs and that such representation was untrue. The parol evidence was offered to vary the terms of the written contract and was properly excluded.

Finally, plaintiffs contend the court committed error in sustaining the defendants' motion to dismiss at the end of plaintiffs' evidence. We agree with plaintiffs.

The court, having heard the evidence, found that the alleged failures of the defendants did not constitute such material and substantial breaches of the contract to justify rescission. This constituted a factual finding, supported by competent evidence, and will not be disturbed on appeal. Conversely, the finding implies that plaintiffs' correct remedy was one for damages. Plaintiffs had originally petitioned for both rescission and dam-

ages but when placed in the position of being forced to elect the theory they were going to proceed upon chose rescission. In an action for rescission a correct finding by the trial court that the defendant's failure to perform the contract did not constitute a material and substantial breach would ordinarily be dispositive of an appeal. *Lehigh, Inc. v. Stevens,* 205 Kan. 103, 468 P.2d 177 (1970); *In re Estate of Brown,* 189 Kan. 193, 368 P.2d 27 (1962); *Thompson v. Wade,* 154 Kan. 611, 121 P.2d 189 (1942). However, the unusual factual situation faced by the trial court requires further consideration.

In the instant case plaintiffs assert they had paid defendants $3,859.70 as a down payment, had expended $1,526.00 on fixtures and other items placed in the property and used their own labor having a value in excess of $1,000.00 in painting and decorating the property. As the case now stands, defendants have been allowed to retain the cash, keep the fixtures and other items placed in the property, take advantage of the labor of the plaintiffs and also dispose of the property for a sum alleged to be in excess of the original contract price. On the other hand, the defendants alleged in their counterclaim that plaintiffs refused to go through with the contract resulting in damages to defendants in excess of $55,000.00.

Neither of the parties contend that the trial court did not have complete equitable jurisdiction.

"A court of equity once having acquired jurisdiction of a subject matter will reach out and draw into its consideration and determination the entire subject matter and bring before it the parties interested therein, so that a full, complete, effectual and final decree adjusting the rights and equities of all the parties in interest may be entered and enforced." *Place v. Place,* 207 Kan. 734, Syl. ¶ 3, 486 P.2d 1354 (1971).

In 27 Am. Jur. 2d, Equity § 249, it is stated:

"While equitable *jurisdiction* is generally to be determined with reference to the situation existing at the time the suit is filed, the *relief* to be accorded by the decree is governed by the conditions which are shown to exist at the time of making thereof, and not by the circumstances attending the inception of the litigation. In making up the final decree in an equity suit the judge may rightly consider matters arising after suit was brought. Therefore, as a general rule, equity will administer such relief as the nature, rights, facts, and exigencies of the case demand at the close of the trial or at the time of the making of the decree."

In *Nelson v. Robinson,* 184 Kan. 340, 336 P.2d 415 (1959), the plaintiff sought cancellation of a real estate sales contract. The

court, after hearing evidence, refused cancellation of the contract but granted a decree giving equitable relief to the parties by way of foreclosure with rights of redemption. On appeal it was asserted that the court had no power in law or in equity to render the judgment it did because its action resulted in making a new contract between the parties. The court in rejecting this argument stated:

"In taking this position defendants either overlook or ignore numerous decisions of this court holding (1) that it is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a controversy on any ground it will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter (citations omitted); (2) that a trial court, sitting as a court of equity, is not obliged to render the specific decree prayed for, but may render a decree in accord with its own good judgment or discretion as to what justice demands, in view of the facts pleaded and evidence adduced (citations omitted); and (3) that in a suit in equity where a court has before it all the property involved, all the parties claiming rights thereto and their respective claims, it should complete the determination of their respective rights and make an appropriate decree so as to avoid future litigation, as far as possible (citations omitted)." pp. 344-345.

Based upon the facts in this case, we are of the opinion that the trial court should have exercised its discretion and broad general equity powers to evaluate the claims between the parties and effect a just, fair and equitable disposition of the case. See *Livingston v. Krown Chemical,* 394 Mich. 144, 229 N.W.2d 793 (1975), *aff'g* 50 Mich. App. 153, 212 N.W.2d 775 (1973); and *R.I. Dairy Queen, Inc. v. Burke,* 95 R.I. 339, 187 A.2d 521 (1963).

We have also considered defendants' motion filed in this court for a dismissal of plaintiffs' appeal for an alleged lack of jurisdiction for failure of plaintiffs to strictly comply with Rule No. 2.04 and the motion is denied.

The decision of the trial court dismissing plaintiffs' action is reversed and the case remanded with directions that the trial court conduct such further proceedings and receive such further evidence as is necessary to adjust all of the claims between the parties in accordance with the views expressed in the opinion.

Reversed and remanded with directions.

FROMME, J., not participating.