NOT DESIGNATED FOR PUBLICATION

No. 123,714

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARGARET A. SPEAR (NELSON),
*Appellee*,

v.

DAMIAN MAYES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed September 2, 2022. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*J. Greg Kite*, of Law Office of J. Greg Kite, of Wichita, for appellee.

Before MALONE, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Joyland Amusement Park was a staple of the Wichita community from its opening in the 1940s until it closed in the mid-2000s. The ownership rights of one of the park's main attractions—a modified Wurlitzer Style 160 "Mammoth" Military Band organ that an animatronic clown affectionately named "Louie the Clown" appeared to play —prompts this appeal. Sadly to Joyland's owner, Margaret Spear (f/k/a Margaret Nelson), Louie the Clown went missing sometime after Joyland's closure. After Joyland's closure and Louie's disappearance, Spear entered into a handwritten contract to sell the remaining organ and an accompanying sign to Damian Mayes, a longtime employee at

1

the park, but Mayes failed to timely pay the full amount owed. In a separate turn of events, the Wichita Police Department discovered the missing clown in Mayes' home, and Mayes eventually pled guilty to the clown's theft. Margaret was understandably upset that her former employee actually possessed the missing clown, and sought to rescind her handwritten contract with Mayes for the sale of the organ, claiming that Mayes had unclean hands and had made fraudulent misrepresentations about his role in stealing Louie the Clown.

After a two-day bench trial, the district court granted Margaret's request for rescission of the contract. On appeal, Mayes now argues that (1) Margaret waived her right to seek rescission by ratifying the contract and by not seeking a timely rescission; (2) Margaret failed to plead her fraud-based rescission claim with particularity; and (3) Margaret failed to prove fraudulent misrepresentation by clear and convincing evidence. This court finds none of Mayes' arguments availing and affirms.

FACTUAL AND PROCEDURAL BACKGROUND

The sorted facts, although cumbersome at times, are of particular consequence to Mayes' claims on appeal. In 1966, Margaret and her then husband purchased Joyland from its original owners. Since the park's inception, one of the central attractions was an old Wurlitzer organ and an animatronic clown named "Louie the Clown" that appeared to play the instrument. Margaret was known to make new clothes for the clown every year, and special outfits on Easter and the Fourth of July. A large sign hung near the organ proclaiming, "Home of the Mighty Wurlitzer Pipe Organ Presenting Louie the World's Greatest Organist Now Playing at the Console." The organ was one-of-a-kind and had bells and percussion, and pipework "designed to simulate a military band, a brass band, John Phillip Sousa type of arrangement. It had trombones, trumpets, piccolos, clarinets, violins, string basses, which [pipework] was unique to this instrument only." Margaret's son, Steve, recalled that "[T]he park would open with Louie being turned on and when we

2

would close, we would turn him off. That's when everybody knew we were done." Joyland eventually closed its doors to the public in October 2006 and later Damian Mayes—who had worked for the Nelsons at the park for decades—became the primary caretaker for the organ. Unfortunately, Louie the Clown went missing when the park closed in 2005 or 2006.

On July 14, 2008, the Wichita Eagle newspaper published an article about the continued disappearance of Louie the Clown and the numerous acts of vandalism that had taken place at the shuttered park, titled, "Missing Pieces Could Further Hurt Joyland; Clown and Wurlitzer Just the Beginning." Mayes featured heavily in the article, which reported several alleged sightings of Louie the Clown. According to the article, Mayes said he did not know the clown's whereabouts and had not seen the beloved clown "in a few years." Mayes also commented, "I have a pretty good passion for him . . . [i]t's really pretty upsetting," and the article explained that Mayes, "who builds and renovates organs, has tried to console himself with replica clowns and other Joyland knickknacks." The article also noted that Mayes was a potential suspect in the clown's disappearance and that police had searched Mayes' home but did not find the clown. The article also featured Margaret, who stated that she did not know where Louie the Clown was and feared that someone had taken it out of state.

In the years after the park closed, Mayes approached the Nelsons about purchasing the Joyland organ that Louie the Clown had once played—the family refused, believing they would one day be able to reopen the park. When Margaret's husband died in July 2010, Mayes again approached her about purchasing the organ and Margaret finally decided it was time.

The parties negotiated the handwritten contract around Margaret's kitchen table, but the list of attendees differs depending on who recalls the event—Mayes and his wife both testified it was just Mayes, his wife, and Margaret, while Margaret's sons—Roger

3

and Steve—testified that they were present along with another man who was helping Mayes finance the purchase. The ultimate contract dated August 16, 2010, which Margaret handwrote, states: "Agreement between Damian Mayes and Margaret Nelson for the Joyland Organ as is, including the lg. sign reading Home of Mighty Wurlitzer Organ." The contract lists the price for the items as $39,000, with an initial down payment of $30,000 and the remaining $9,000 to be paid by February 16, 2011. During the negotiations, Margaret asked Mayes if he knew the whereabouts of Louie the Clown (which had now been missing for around 5 years)—Mayes responded that he absolutely did not. Margaret believed Mayes and decided to go forward with the sale. Mayes paid the initial $30,000 that day, which comprised money gathered from several other individuals; in fact, Mayes only contributed $5,000 to the initial payment—which he borrowed. Mayes never tendered the outstanding $9,000.

Although Louie the Clown had been missing since 2005 or 2006, the Nelsons only filed a theft report with the Wichita Police Department on December 20, 2010—about four months after the sale of the Wurlitzer organ and accompanying sign. In February 2015, following a lead gathered from Mayes' sister's Facebook posts, the Wichita Police Department went to Mayes' home. Mayes' wife allowed a police officer to enter the home, where he immediately spotted Louie the Clown sitting on a chair in the living room. Initially Mayes' wife told the officer that the clown was merely a replica, and she did not know the whereabouts of the original Louie the Clown. Unpersuaded, the officer obtained a search warrant, which ultimately produced several other pilfered Joyland items. Eventually, Margaret's son, Roger Nelson, and Jerry Ottaway, the son of one of the original owners of Joyland, identified the clown in Mayes' living room as the original Louie the Clown. At the time of the discovery, Mayes was incarcerated on unrelated charges. See *State v. Mayes*, No. 107,409, 2013 WL 1688927 (Kan. App. 2013) (unpublished opinion). Although Mayes' wife continued to call the clown a replica, she eventually conceded at trial that it "was the clown that was removed from Joyland."

4

On February 10, 2016, a year after police recovered Louie, the State charged Mayes with two counts of theft, one of which related to Louie the Clown. That same day, Margaret filed a petition alleging Mayes had breached the contract for the purchase of the Joyland organ because he failed to pay the outstanding $9,000. In her petition, she requested performance on the remaining balance or the return of the organ and accompanying sign. In his answer, Mayes asserted that he was willing to pay the outstanding $9,000 and had simply been unable to locate Margaret, who had moved away from Wichita and had changed her name after getting remarried. Moreover, Mayes claimed that the contract was not simply for the organ and sign but included the "clown that went with the organ." Margaret responded that Louie the Clown could not have been included as part of the contract as it had been missing for nearly five years before they entered into the contract.

On May 3, 2016, Margaret filed a motion seeking an order voiding the contract—rather than seeking continued enforcement of the contract. Using this defective legal mechanism, Margaret argued that the district court should rescind the contract for "illegality, fraud and misrepresentation" based on Mayes' theft of the clown, the concealment of his theft, and fraudulent misrepresentations. Specifically, she contended that if she had known that Mayes had stolen Louie the Clown, she would not have entered into the contract to sell him the organ and the accompanying sign. Mayes responded, noting that the criminal charges about the clown remained pending and that Margaret had to amend her petition to assert a new claim rather than moving to void the contract. Mayes also offered to pay the $9,000 owed on the contract. Several months later, Mayes pled guilty in the criminal case involving the theft of Louie the Clown and shortly thereafter his counsel withdrew from the civil case. At his sentencing in December 2016, Margaret gave a victim impact statement outlining the damage his actions had caused. Mayes was ultimately sentenced to 15 months' imprisonment for the theft of Louie the Clown.

On August 31, 2017, Mayes obtained new counsel and filed a memorandum in opposition to Margaret's motion to void the contract, arguing Margaret was bound by the contract and had not properly pled any fraud-based rescission claim. At the hearing on Margaret's motion, she explained that she simply wanted the organ and sign returned in exchange for the $30,000 Mayes had paid—she sought rescission of the contract. The court denied her motion, noting that she had not pled a cause of action seeking the equitable remedy of rescission based on Mayes' fraudulent misrepresentation, but the court granted Margaret two weeks to amend her petition to add the claim.

In Margaret's amended petition, she maintained her original breach of contract claim and added a second claim requesting rescission of the contract because of Mayes' "unclean hands" based on his "fraud, misrepresentation, concealment and illegality." Margaret's sole requested remedy was rescission of the contract—she sought no monetary damages. Six months later, Mayes filed a motion to dismiss and a motion for partial summary judgment in which he alleged that Margaret's amended petition was deficient because

- she did not plead fraud with particularity;
- Mayes did not engage in any actionable misrepresentation;
- Margaret's claim for rescission was barred under the doctrine of laches;
- Margaret had violated discovery orders; and
- the district court must enforce the contract as written.

After a hearing, the court denied Mayes' motions, noting that "all issues have to be interpreted by the one defending the motion . . . . Fraud is an issue of fact" and that Margaret "might be able to reach that burden of proof, which is a higher burden of proof at trial."

6

Sadly, Margaret was placed in an assisted living facility prior to trial due to the onset of Alzheimer's-based dementia—her doctor described her mental condition as "progressive and deteriorating." Margaret's counsel contended that she was "not capable mentally of being deposed or providing testimony. . . . It's not possible." As a result, Margaret would not participate in the trial and she named one of her sons and her daughter as attorneys-in-fact.

In September 2020, the parties proceeded to trial where Mayes quickly stipulated that the clown recovered from his house was in fact the original Louie the Clown, but he maintained that he had rightfully bought it from Margaret along with the organ and sign. Mayes contended that Louie the Clown was included in the sale because the "Joyland organ" described in the handwritten contract meant both the clown and the organ—"it was all part of one unit." Mayes and his wife claimed that Margaret was in possession of Louie the Clown when the parties entered into the contract in 2010 and that Mayes had not stolen the clown, despite his conviction for its theft. Mayes' wife also stated that when Joyland closed and began having trouble with vandalism and fires, Margaret had permitted them to take possession of Louie the Clown to keep it safe. Their testimony stood in stark opposition to that of Margaret's sons, who asserted that

- Louie the Clown had been missing from the park since 2005 or 2006;
- Margaret specifically asked Mayes if he had the clown before entering into the contract;
- Mayes vehemently denied stealing it;
- their mother believed Mayes' claims of innocence; and
- she never would have sold the organ to Mayes if he had admitted to stealing Louie the Clown.

During closing argument, Margaret's counsel asked the court to rescind the contract and to order the return of the organ and sign in exchange for the return of the

7

$30,000 down payment—putting both parties in the place they had been before executing the contract. Mayes requested that the court deny the request for rescission, and instead find that he had breached the contract and order him to pay the outstanding balance of $9,000. Ultimately, the district court granted Margaret the equitable remedy of rescission, explaining:

> "On our break I was reviewing the evidence, and I have determined that the contract was entered into based upon misrepresentation. Therefore, I am going to grant the equitable relief of rescission and order that the Wurlitzer Organ and the sign be returned to the Nelson's, [*sic*] and that the Nelson's [*sic*] reimburse the Mayes' [*sic*] their $30,000, well, I guess it would be $25,000, since they are only out $25,000 since Mr. Rine did not get paid back. . . .

> "The equitable remedy is to make the parties in the same position that they were before the contract was entered into. The Mayes' [*sic*] are not out $30,000, they are out $25,000. Mr. Rine is out $5,000. . . .

> "I think it's clear from the two-line contract that Louie the Clown was not part of the agreement. I do believe that the contract anticipated only the sale of the Wurlitzer and the sale of the sign.

> "I think based upon the fact that had Ms. Spear [Nelson] known that Mr. Mayes was in possession of Louie when it appeared to be missing, I don't think that she would have sold the Wurlitzer to him originally. I think rescission of the contract is warranted."

After trial, Mayes moved to alter or amend judgment, asserting that Margaret failed to establish that he had made any misrepresentation about Louie, that she relied on any such representation, or that she had suffered damages therefrom. The district court denied the bulk of Mayes' motion, but it slightly amended its judgment, ordering the Nelsons to return the full $30,000 initial payment to Mayes—the court had initially

8

ordered the Nelsons to return only $25,000 because Mayes had borrowed $5,000 from another man and never paid him back.

Mayes appeals.

DISCUSSION

Mayes raises several arguments attacking the outcome of the district court proceedings. First, he contends Margaret waived her right to seek rescission—an issue he did not litigate before the district court. Second, he asserts that Margaret failed to plead her fraud-based rescission claim with particularity. Finally, he argues the district court abused its discretion in rendering judgment in Margaret's favor and that she failed to prove fraudulent misrepresentation by clear and convincing evidence.

1.     *Mayes failed to raise his claim to the district court that Margaret waived her right to seek rescission and this court will not address his argument on appeal.*

Mayes contends that Margaret was barred from seeking the equitable remedy of rescission because she ratified the contract by seeking damages for breach of contract in her original petition, and in the alternative, that she failed to timely raise her claim for rescission after learning of his misrepresentations about Louie the Clown. While Mayes concedes that he did not raise either of these issues before the district court, he maintains that this court should nevertheless reach the merits of his claims. This court disagrees.

Generally, appellants cannot raise issues for the first time on appeal that were not first raised before the district court. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). However, as with any general rule, there are exceptions to the prohibition, such as when:

9

"'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason.'" *143rd Street Investors, L.L.C. v. Board of Johnson County Comm'rs*, 292 Kan. 690, 706, 259 P.3d 644 (2011).

The party raising a claim for the first time on appeal must explain why this court should apply an exception to reach the merits. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018); Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. at 36) ("If the issue was not raised below, there must be an explanation why the issue is properly before the court."). Mayes claims this court should review his waiver-based arguments under the first and second exceptions.

The first exception does not apply here because Mayes' arguments are not mere questions of law that arise on proved or admitted facts. Although Mayes contends that "[w]hether or not [Margaret] waived her right of recovery under rescission based on acceptance or ratification of the contract is a question of law," his claim demands analysis of the facts and circumstances surrounding the parties' entrance into the contract, Margaret's discovery of Mayes' theft of the clown, his misrepresentations about his actions, and the time between the clown's discovery and Margaret's pursuit of rescission. Thus, whether Margaret waived her right to rescind the contract through ratification or by untimely asserting it is not merely a question of law. See *Hoke v. Stevens-Norton, Inc.*, 60 Wash. 2d 775, 777, 375 P.2d 743 (1962) ("[W]aiver of the right to rescind is a matter of intent, and, absent compelling circumstances, presents a question of fact."); 17 Am. Jur. 2d, Contracts, § 535 ("There is no hard and fast rule as to the right of rescission for cause; the right usually depends on the circumstances of the particular case."). Accordingly, the first exception to the general preservation requirement does not save Mayes' unpreserved claims.

Next, Mayes generally suggests that this court's consideration of the issue is necessary to serve the ends of justice under the second exception—notably, he does not contend that he will be denied any fundamental right if this court declines to reach his claims. The difficulty with relying on the "ends of justice" exception is that this court must be able to consider the merits of the issue in order to determine whether justice demands its resolution: "'[T]o serve the ends of justice or to prevent the denial of fundamental rights, it follows that, on consideration, [this court] must find reversible error occurred.'" *State v. Ortega-Cadelan*, 287 Kan. 157, 160, 194 P.3d 1195 (2008). As noted below, Mayes' claims regarding Margaret's alleged waiver of her right to rescind the contract lack merit—making their consideration unnecessary to serve the ends of justice.

Because Mayes failed to raise his waiver arguments before the district court—and no recognized exception to the preservation requirement applies—this court will not reach the merits of Mayes' claim that Margaret is barred from seeking the remedy of rescission either by waiver or idleness.

2.      *The district court did not abuse its discretion in granting rescission of the contract.*

Mayes argues the district court abused its discretion by granting Margaret rescission of the contract because:  (1) the court erred in its application of the law by permitting a fraud-based claim despite finding that Margaret had failed to plead fraud; and (2) Mayes' fraud-based rescission claims should have been dismissed before trial because they were not plead with sufficient particularity. In his first argument, Mayes contends the court erred by ordering rescission based on his fraudulent misrepresentation because the court "found that [Margaret] could not be awarded rescission based on fraud because it was not properly pled, and that the unclean hands doctrine was inapplicable as it was not a proper pleading."

11

Rescission is an equitable remedy—that is, a remedy requiring a party to act or cease acting in order to resolve a matter when monetary damages are not sought or would be inadequate. *Baker v. Tucker*, 227 Kan. 86, 89, 605 P.2d 114 (1980) ("An action in recission is considered equitable."). This court reviews the district court's decision to grant rescission for an abuse of discretion because "[a] court sitting in equity has the discretion to determine what is fair and equitable under the circumstances." *In re Partnership of PB&R*, 52 Kan. App. 2d 871, 874, 380 P.3d 234 (2016); see *Baker*, 227 Kan. at 92. A court abuses its discretion if its decision stems from an error of law or fact or is otherwise arbitrary or unreasonable such that no other person would decide similarly. *In re Partnership of PB&R,* 52 Kan. App. 2d at 874-75.

### a. *The district court did not dismiss Margaret's fraud-based claims.*

Mayes' first argument stems from a comment made by the district court during the parties' opening statements. Mayes' counsel commented that Margaret was "trying to prove a fraud case by trying to prove a criminal case. What is the use?" The district court then interjected: "There's no fraud pled. It is not fraud because fraud has to be pled with particularity in the petition. I understand unclean hands, but that is different." Mayes' counsel responded, "Your honor, that was the bases [*sic*] of one of our pretrial motions, and I'm sure you've read them all." While the court made no further comment on the matter, Mayes contends the court's statement somehow constituted a ruling or an order dismissing all the fraud-based grounds for rescission. Margaret claims Mayes' argument is flawed because the judge's comment was not a ruling and was "nothing more than an incongruent remark." When considering the totality of the circumstances, including: the court's ruling on Mayes' pretrial motions to dismiss and for partial summary judgment; the pretrial order entered by the parties; and the court's ultimate ruling on the conclusion of the trial granting rescission based on misrepresentation—Margaret's understanding of the district judge's comment is accurate.

12

Mayes alleged that Margaret insufficiently pled the fraud-based rescission claim in both his motion to dismiss and his motion for summary judgment. As discussed more thoroughly below, Margaret's amended petition did not specifically delineate the five elements of fraud established by Kansas caselaw and set forth in PIK Civ. 3d 127.40 (2016 Supp.). Rather, Margaret's second cause of action—for rescission of the contract for the organ and sign—asserted that Mayes' "fraud, misrepresentation, concealment and illegality, [rendered his] hands unclean" as the grounds for granting her request. However, the district court denied Mayes' motions, noting that Margaret sufficiently pled the fraud-based claims when assuming as true all the well-pled facts and inferences that could reasonably be drawn from her petition.

The pretrial order contained several questions of fact and law related to Mayes' alleged misrepresentation and fraud—further suggesting the court had not dismissed Margaret's misrepresentation-based rescission claim. Although Margaret framed her cause of action as invoking the unclean hands doctrine based on Mayes' "fraud, misrepresentation, concealment and illegality," the pretrial order reflects that the issue of whether Mayes' fraudulent misrepresentations spurred Margaret to enter into the contract had not been dismissed. And while Mayes' argument attacks Margaret's amended petition, it is important to note that "[b]ecause Kansas is a notice-pleading state, the petition is not intended to govern the entire course of the case." *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 918, 257 P.3d 287 (2011). Rather, "the pretrial order is the ultimate determinant as to the legal issues and theories on which the case will be decided." *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009). Because the pretrial order included questions of fact and law concerning Mayes' allegedly fraudulent misrepresentations and actions—the district court clearly had not dismissed Margaret's fraud-based rescission claim.

Finally, the district court's ultimate conclusion that Margaret proved by clear and convincing evidence that the disputed contract was entered into based on Mayes'

13

fraudulent misrepresentation further demonstrates that the court did not dismiss the claim in the opening moments of trial. The district court found that "the contract was entered into based upon misrepresentation" and granted Margaret's request for rescission. In the journal entry summarizing this ruling, the court found:

> "1. The Agreement (contract) was entered into based upon misrepresentation of the defendant.
>
> "2. 'Louie the Clown' was not part of the Agreement (contract).
>
> "3. The Agreement (contract) anticipated only the sale of the Wurlitzer Organ and the large Sign.
>
> "4. Had the plaintiff known, when it appeared to be missing, that the defendant was in possession of "Louie the Clown," she would not have sold the Wurlitzer Organ and the large Sign to him originally."

When viewing the district court's remark during opening argument with the totality of the court's other rulings, Mayes' argument is unfounded.

      b. *Margaret sufficiently pled her rescission claim based on fraudulent misrepresentation.*

Mayes' next contention is that Margaret failed to plead her fraud-based rescission claim with sufficient particularity and the district court should have dismissed it before the trial. Prior to trial, Mayes simultaneously challenged Margaret's petition as insufficiently pled through a motion to dismiss and a motion for partial summary judgment. The district court denied both motions and commenced with the trial where it ultimately found that Margaret actually proved fraudulent misrepresentation. Therefore, Mayes seeks the illogical result of this court finding that Margaret's petition contained insufficient facts to assert a fraud-based rescission claim after a district court has found that sufficient evidence existed at trial to support that same claim.

When a defendant moves to dismiss under K.S.A. 2021 Supp. 60-212(b)(6) challenging the legal sufficiency of a claim, a court must decide the issue based only on the well-pled facts and allegations generally drawn from the petition. "Courts must resolve every factual dispute in the plaintiff's favor when determining whether the petition states any valid claim for relief. Dismissal is proper only when the allegations in the petition clearly demonstrate that the plaintiff does not have a claim." *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.,* 305 Kan. 761, 767-78, 388 P.3d 84 (2017). On review, appellate courts "assume as true the well-pled facts and any inferences reasonably drawn from them. If those facts and inferences state *any claim* upon which relief can be granted, dismissal is improper." (Emphasis added.) 305 Kan. at 768.

While the court treats a motion to dismiss and a motion for summary judgment similarly,

> "'[t]he important distinction between the handling of a motion to dismiss on the one hand and a motion for summary judgment on the other is that in the former the trial court is limited to a review of the pleadings, while in the latter, *the trial court takes into consideration all of the facts disclosed during the discovery process*—affidavits, depositions, admissions, and answers to interrogatories.'" *Keiswetter v. State*, 304 Kan. 362, 367-68, 373 P.3d 803 (2016).

See *Doe H.B. v. M.J.*, 59 Kan. App. 2d 273, 282, 482 P.3d 596 (2021) (contrasting motions to dismiss, which are limited to a review of the pleadings, with motions for summary judgment, which consider all facts disclosed during discovery). Summary judgment is appropriate only when "'there is no genuine issue as to any material fact'" and "'the moving party is entitled to judgment as a matter of law.'" *Stechschulte v. Jennings*, 297 Kan. 2, 14, 298 P.3d 1083 (2013). As with a motion to dismiss, courts must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. To successfully oppose a motion for summary

15

judgment, a party must come forward with evidence to establish a dispute as to a material fact—so long as reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. 297 Kan. at 14. Ordinarily summary judgment will not be granted when—as here—discovery is incomplete unless the facts pertinent to the material issues are not controverted. See *Halley v. Barnabe*, 271 Kan. 652, 657, 24 P.3d 140 (2001).

"Generally, a pleading is sufficient if it contains a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment. However, when pleading fraud, the circumstances constituting fraud must be stated with particularity." *Vondracek v. Mid State Co Op, Inc.*, 32 Kan. App. 2d 98, Syl. ¶ 2, 79 P.3d 197 (2003); see K.S.A. 2021 Supp. 60-209(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The district court must dismiss a party's fraud claim for failure to allege fraud with sufficient particularity in the pleadings. See *Palmer v. Brown*, 242 Kan. 893, 901, 752 P.2d 685 (1988); *Newcastle Homes, LLC v. Thye*, 44 Kan. App. 2d 774, 789, 241 P.3d 988 (2010). Kansas is not alone in requiring that fraud be pled with particularity; Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

Although Kansas is like many jurisdictions in requiring that fraud be pled with particularity—whether that particularity requirement applies to an equitable claim for rescission based on fraud or fraudulent misrepresentation appears to be a matter of first impression for this court. Some courts have found that Fed. Civ. Pro. 9(b) applies "equally to allegations of fraud in support of rescission and restitution" because the "principal purpose of Rule 9(b) is to afford a defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *In re Commercial Financial Services, Inc.*, 268 B.R. 579, 602 (Bankr. N.D. Okla. 2001); see *Mills v. Everest Reinsurance Co.*,

16

410 F. Supp. 2d 243, 253 (S.D.N.Y. 2006) (finding a rescission claim based on fraud was not pled with particularity under Fed. R. Civ. P. 9[b]). Because Kansas' rules of civil procedure are modeled after the Federal Rules of Civil Procedure, federal caselaw is "especially persuasive when interpreting our rules." *In re Estate of Fechner*, 56 Kan. App. 2d 519, 527, 432 P.3d 93 (2018). Other states that have modeled their rules of civil procedure from the federal rules have found similarly. See *KnighTek, LLC v. Jive Commc'ns, Inc.*, 225 A.3d 343, 351 (Del. 2020) (applying particularity requirement to the plaintiff's action for rescission based on fraudulent misrepresentation and fraudulent concealment); *Silver v. Colorado Casualty Insurance Co.*, 219 P.3d 324, 327 (Colo. App. 2009) (assuming without deciding "that a defense of rescission based on an allegation of fraud is subject to the pleading requirements of Rule 9[b]"). Accordingly, this court will apply the particularity requirement of K.S.A. 2021 Supp. 60-209(b) to Margaret's fraud-based rescission claims regarding Mayes' fraudulent misrepresentations about his theft of Louie the Clown.

Assuming the particularity requirements apply to Margaret's claims, this court must determine whether Margaret's pleadings meet this standard. A plaintiff alleging fraud as a cause of action must state the *circumstances* constituting fraud with particularity. K.S.A. 2021 Supp. 60-209(b); *Newcastle Homes, LLC*, 44 Kan. App. 2d at 788 ("Kansas case law demonstrates that the statutory requirement to plead fraud with particularity is strictly enforced."). The petition must state which representations were made, that they were false, that the representations were believed to be true, and that the plaintiff relied and acted on the misrepresentation and suffered a detriment. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 53, 11 P.3d 1134 (2000); *Geer v. Cox*, 242 F. Supp. 2d 1009, 1024 (D. Kan. 2003) ("[T]o survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'").

Margaret did not seek monetary damages based on Mayes' fraudulent misrepresentation—but sought the equitable remedy that both parties be put back into their original condition. This court agrees that Margaret did not delineate the elements of fraud, rather her amended petition sought rescission based on Mayes' unclean hands based on his "fraud, misrepresentation, concealment and illegality." While Margaret did not specifically outline the elements, her petition included particular facts and circumstances amounting to a claim of fraudulent misrepresentation, including:

- Louie the Clown went missing from Joyland Amusement Park in 2005 or 2006.
- She did not know Louie the Clown's whereabouts.
- In 2008, Mayes told the Wichita Eagle that he had not seen Louie the Clown in years and had no indication of its whereabouts.
- Louie the Clown was found at Mayes' residence in 2015.
- Mayes was charged with, and pleaded to, the charge of theft of Louie the Clown.
- Mayes was an employee of Joyland, and she trusted him.
- She would not have executed the contract to sell Mayes the organ and sign if he had not lied about stealing Louie the Clown.

Although Margaret's amended petition is leaner on the details than is preferable— she included allegations, which along with the reasonable inferences this court may draw, set forth a specific allegation of Mayes' alleged fraudulent misrepresentation. Margaret alleged that Mayes' false representation was that he did not know Louie the Clown's whereabouts and that he had played no role in its disappearance. Louie the Clown was later found in Mayes' house and Mayes pled guilty to its theft—meaning that Mayes knew his statements about Louie were false when he made them. Margaret also alleged that she relied on Mayes' assertion because she would not have entered into the contract if

18

she knew of Mayes' wrongdoing. Mayes' representations in the newspaper were calculated to make him not appear as a thief, and likely to maintain the trusting relationship that led Margaret to agree to sell him the organ. If Margaret proved each of these assertions in the amended petition—as the district court ultimately found—she could establish a valid claim of fraudulent misrepresentation.

Although Margaret's petition is not a model of clarity, it contained sufficient information about the time, place, and substance of Mayes' false representation as well as the consequences stemming from his denial that he knew Louie the Clown's whereabouts. When read in a manner giving the benefit of all reasonable inferences derived from its allegations, Margaret's amended petition satisfies the heightened pleading standards for a rescission claim based on fraudulent misrepresentation. Thus, the district court did not err in denying Mayes' motion to dismiss. Moreover, as explained below, the simple allegations in the amended petition formed the basis for her claims at trial and Mayes had all necessary facts through the petition to prepare for and assert his defense.

3. *Margaret proved Mayes' fraudulent misrepresentation by clear and convincing evidence.*

Finally, Mayes alleges that Margaret failed to sustain her burden to prove fraudulent misrepresentation at trial. A claim for fraudulent misrepresentation requires a showing that it is:

1. an untrue statement of material fact;
2. known to be untrue;
3. made with the intent to deceive or with reckless disregard for the truth;
4. upon which another party justifiably relies; and
5. to their detriment.

*Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991).

19

"Actionable fraud also includes anything calculated to deceive, such as omissions or concealment of acts and/or facts which legally or equitably should be revealed, which results in damage to another." *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, Syl. ¶ 3, 738 P.2d 1210 (1987).

The court never presumes fraud, and the party asserting fraud claims must prove them by clear and convincing evidence. *Chism v. Protective Life Insurance Co.*, 290 Kan. 645, Syl. ¶ 3, 234 P.3d 780 (2010). An appellate court's standard of review is "limited to determining whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law." *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004); see also *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980). In conducting this review, this court is "'not concerned with the credibility of witnesses or the weight of their testimony, and the trier of facts, not the court of appellate review, has the responsibility of determining what testimony should be believed.'" 227 Kan. at 65.

Mayes claims that even if Margaret pled fraudulent misrepresentation with sufficient particularity, she failed to prove one of the essential elements:  that she suffered some damage, harm, or detriment as a result of her reliance on his misrepresentation about the whereabouts of Louie the Clown. Mayes does not argue that Margaret failed to produce clear and convincing evidence of the other elements of fraud. He concedes that Margaret presented evidence that she would not have executed the contract to sell the organ and sign if she knew that he "*had stolen*" or that he "*had possession*" of Louie the Clown. (Emphasis added.) But he argues that no evidence showed that she would not have entered into the contract if she knew that he "*had taken*" the clown. (Emphasis added.)

If intentional, Mayes' peculiar distinction between *stolen* and *taken* provides little support for Mayes' argument. While Margaret did not present evidence of any monetary

20

damages—as she was only seeking an equitable remedy and not a monetary one—there was ample evidence to support Margaret's assertion that she would not have entered into the contract with Mayes if she had known of his theft of Louie the Clown. A party's entrance into a contract based on a misrepresentation is sufficient to constitute the element of damage or detriment. See *Smith v. Stephens*, 23 Kan. App. 2d 1013, 1015, 940 P.2d 68 (1997) (finding plaintiff proved that they relied to their detriment because they would not have purchased a liquor store absent the defendant's representations about gross sales figures).

At the time the parties negotiated and executed the contract, Louie had been missing from the park since 2005 or 2006, and—according to Margaret's sons —no one in the family knew the clown's whereabouts. Margaret's son Steve, who was also present during the contract negotiations, testified that Margaret specifically asked Mayes if he knew where the clown was, and Mayes said that he "absolutely" did not. Moreover, Margaret's son Roger testified that if anyone in the family had any inkling that Mayes had stolen Louie the Clown, they would not have sold him the accompanying organ and sign. Mayes and his wife both claimed that during the negotiations for the sale of the organ, Margaret never asked Mayes if he knew of Louie the Clown's location. The district court clearly did not believe Mayes' and his wife's testimony in that regard, and this court will not reweigh the credibility of the witnesses when reviewing whether there was clear and convincing evidence of fraud. *Nordstrom*, 227 Kan. at 65.

The record contains sufficient, competent evidence supporting the court's finding that Mayes made fraudulent misrepresentations to Margaret and the Nelsons about his involvement in the theft of Louie the Clown—and that but for those misrepresentations, Margaret would not have contracted to sell the organ and sign.

21

The district court found that equity required rescission of the handwritten contract for the sale of the organ based on Mayes' misrepresentations. Mayes' claim that Margaret waived her right to seek rescission by her ratification of the contract or her untimely assertion of her right to rescind was not preserved for appeal. This court agrees with the district court and affirms its recission of the contract. This court also finds that Margaret sufficiently pled the fraud-based rescission claim with particularity in her amended petition, and ultimately proved fraudulent misrepresentation by clear and convincing evidence. Thus, there is no need to engage in the illogical result of sweeping away sufficient, competent trial findings because of insufficient pleadings.

Affirmed.